1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KEVIN FRANK LEMMON,                    No. 2:17-cv-1639 KJM KJN

12                      Petitioner,

13          v.                               FINDINGS & RECOMMENDATIONS

14    SCOTT FRAUNHEIM, Warden,

15                      Respondent.

16

17    I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2013 convictions for

20    murder, robbery and burglary.  Petitioner was originally sentenced to nine years plus life without

21    the possibility of parole in state prison.  Petitioner asserts a total of nine claims in violation of his

22    federal constitutional rights.  After careful review of the record, this court concludes that the

23    petition should be denied.

24    II.  Procedural History

25          On June 12, 2013, a jury found petitioner guilty of first degree murder (count one – Cal.

26    Pen. Code § 187(a)), first degree robbery (count two – Cal. Pen. Code § 211), and first degree

27    burglary (count three – Cal. Pen. Code § 459); further, the jury found true both robbery and

28    burglary special circumstances as to count one (Cal. Pen. Code, § 190.2(a)(17)), as well as a true

                                              1

finding regarding count two: robbery in concert (Cal. Pen. Code, § 213(a)(1)(A)).  (ECF No. 14-1 at 240-45 & 14-8 at 105-09.[1])  On August 23, 2013, petitioner was sentenced to a determinate term of nine years plus life without the possibility of parole.  (ECF No. 14-2 at 43-45, 47-50 & 14-8 at 119-36.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  The Court of Appeal modified petitioner's sentence by staying the imposition as to count two and its enhancements and directed the trial court to amend the abstract of judgment to correct a clerical error; it otherwise affirmed the conviction on September 29, 2016; the opinion was then modified without change to the judgment and rehearing was denied on October 25, 2016.  (ECF No. 14-18.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on December 14, 2016.  (ECF No. 14-19.)

Petitioner filed the instant petition on August 7, 2017.  (ECF No. 1.)  Respondent answered on November 21, 2017.  (ECF No. 11.)  Thereafter, respondent lodged the record with this court on January 24, 2019.[2]  (ECF No. 14.)

III.  Facts[3]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In December 2011, defendant Lemmon and his girlfriend Amanda Welcher were living in the home of Charles Deckard and Camelle Lowrey on Orion Way. Defendant Freed's brother, Bobby, also lived in the Orion Way house. Defendant Freed was not living at the Orion Way house, but had stayed there for a couple of nights before the

---

[1] References to the record will refer to the docket number (e.g., 14-1, 14-2, etc.) and to the specific page number(s) assigned by this court's electronic filing system.

[2] A corrected version of ECF No. 14-6 was filed on June 19, 2019, at the court's direction.  (ECF No. 16.)

[3] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Lemmon, No. C074689, September 29, 2016, a copy of which was lodged by respondent as Document 18 (see ECF No. 14-18) on January 24, 2019.

incident. Kevin Matthews, who accepted a plea agreement in exchange for his testimony, was a friend of Lemmon's. [Fn. Omitted.]

Matthews went to the Orion Way house with Lemmon and Welcher because Matthews wanted methamphetamine. At the house, Matthews got methamphetamine from Lemmon. On the way there, they stopped for gas where Welcher got a phone call.

Following the call she said something to Lemmon, whereupon Lemmon asked Matthews to go with him to retrieve some of Welcher's belongings from the victim, Steven Johnson. Matthews, Lemmon, and Freed left in Lemmon's truck. Lemmon said if Johnson did not hand over Amanda's belongings, they would "kick his ass."

Lemmon drove Matthews and Freed to the Hilltop Lodge. They parked at a nearby restaurant parking lot, where they saw three teenage boys outside of room 117.

They thought the boys might be with the victim in room 117. Lemmon and Freed got out of the truck, while Matthews drove the truck around the parking lot. After a few minutes, Matthews parked and got out of the truck, and Lemmon and Freed returned to the truck.

Lemmon asked to use Matthews's cell phone to call Amanda Welcher. Lemmon asked Welcher for confirmation that they had the right room. After the phone call ended, Lemmon said that the victim had $1,900 and a bag of methamphetamine. Lemmon said they would get Amanda's things and if there was anything else, they would take it. They got back in the truck, and parked at another nearby parking lot.

Lemmon had a can of pepper spray, and he handed Matthews a crowbar, which Matthews refused. Matthews did not see anything in Freed's possession. Freed's plan was to knock on the victim's door and ask for a glass of water. Matthews was supposed to stand outside and keep watch.

Freed and Lemmon did not go directly to room 117 because Lemmon was concerned about the three boys. Eventually Freed knocked on the door. When Johnson answered, Freed asked for a glass of water and said, "do you remember me?" Johnson said he did not, then Freed "cracked the guy in the face and entered the room." Lemmon ran into the room. Matthews could hear fighting and things being tossed in the room.

People began to look out their doors and windows. One couple asked what was going on. Matthews told them a young girl was in trouble. Matthews went to the room, and saw through the partially open door that Lemmon was swinging his right arm back. He saw a backpack in Lemmon's right hand. Matthews closed the door and went back to the truck.

Matthews, Lemmon, and Freed all got to the truck at about the same

time. Lemmon was carrying two backpacks. Freed was rubbing his face and breathing heavily. He complained about his vision and breathing. Freed was yelling and complaining during the trip back to the Orion Way house about being sprayed in the face. They were all three having a hard time breathing because of the smell of pepper spray in the vehicle.

Lemmon complained that Freed had gone overboard. Freed said, "What was I supposed to do? He was fighting back." Lemmon said, "[W]e were only supposed to rough the guy up." Freed had a folding knife in his hand, held it up, and asked Lemmon what he should do with it. Lemmon responded, "Fuck you; that's on you." Lemmon told Freed to get rid of the knife, so Freed tossed the knife out the window. Lemmon asked Freed what he had taken out of the victim's pocket. Freed answered "this," and threw a couple of wadded bills on the dash.

Matthews later showed police where Freed had thrown the knife. The knife was found during a police search of the area Matthews indicated. The knife had dried blood on the blade. DNA testing of the dried blood on the knife blade matched the victim's DNA. There was also DNA on the knife handle. The profile of the primary contributor of the DNA on the handle matched Freed's DNA.

When Lemmon, Freed, and Matthews got to the Orion Way house, Freed and Lemmon immediately went to the bathroom to wash their faces. They pulled the truck they had driven into the garage. Freed said he might have hurt some guy. He mentioned using a knife and stabbing someone. He said, "I think he's dead" and "I think I stabbed him eight deep and he's dead." Freed owned a silver folding knife.

Lemmon was upset with Welcher because the backpacks did not belong to her. Both backpacks contained boxer shorts, socks, and men's toiletries. One backpack contained pornographic DVD's and Amanda was upset about these because "[t]hey were 18 and under." There were papers in the backpacks, which Matthews burned in the barbeque pit.

Sergeant Todd Cogle of the Redding Police Department responded to the murder scene after receiving a call regarding a disturbance in room 117 at the Hilltop Lodge. He arrived around 9:00 p.m. Upon arriving at room 117, he found the night manager of the motel, Pamela Kunkler, with a male subject, Johnson, who was on the ground and bleeding. Kunkler had received a call from the 911 operator that a man was hurt, so Kunkler went to check it out.

Medical personnel arrived shortly after Cogle, and Cogle could see when they lifted the victim's shirt that he had several stab wounds on his chest. The victim was identified as Steven Johnny Johnson. Cogle also noticed that the room smelled like pepper spray. It made Cogle's eyes water, and made him cough. He also noticed the medical staff coughing. Cogle found a black can that looked like a mace can lying on the floor about four to five feet from the body. Subsequent testing of DNA from the spray can matched Lemmon's DNA profile. DNA testing excluded Johnson, Matthews, and Freed as contributors to the

4

DNA on the spray can.

Jeff Woodard was living at the Hilltop Lodge on December 14, 2011. He remembered seeing two or three people walking by his room. Will Williams, a police investigator, interviewed Woodard following the incident. Woodard told Williams that there had been a commotion, and that one person had gone to see what was going on. When that person walked by Woodard, he told Woodard there was no problem, that they were there helping a 14-year-old girl who had been in a room with a man. Woodard also told Williams that one of the three men, a heavyset rough-looking man with an olive complexion, had been rubbing his eyes. Freed was around five feet six inches tall and weighed 350 pounds.

Ismael Porras was a friend of defendant Freed. He testified he did not know defendant Lemmon before he came to jail. Porras had been homeless in December 2011.

Between 12:00 a.m. and 4:00 a.m. on December 15, police officers observed a person carrying several bags get into a car at the Orion Way house. The car was registered to Porras. Porras later admitted leaving the house with two backpacks he got from Freed. He said the backpacks contained toiletry items.

Johnson suffered five stab wounds: three to the chest, one on the neck, and one to the upper abdomen. The cause of death was multiple stab wounds leading to blood loss.

People v. Lemmon, 2016 WL 5462412 at *2-4 (Sept. 29, 2016).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

5

determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] Lockyer v.

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

////

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V.  Petitioner's Claims

    A. *The Sufficiency of the Evidence Pertaining to the Murder Conviction*

    Petitioner claims there is insufficient evidence to support his conviction for first degree murder because "[i]n the absence of accomplice Kenneth Matthews' uncorroborated testimony … about an intent to rob Steven Johnson via a planned surprise attack, there is no substantial evidence that petitioner committed first degree felony murder … [and] [b]ecause the record reflects a reasonable probability jurors relied on this theory to convict, reversal is required." (ECF No. 1 at 16.)  Respondent contends the state court reasonably determined there was sufficient evidence to support the first degree murder conviction.  (ECF No. 11 at 16-19.)

    The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> A. There is Sufficient Evidence to Support a Finding of First Degree Murder
>
> In finding a defendant guilty of a crime, the jury cannot rely solely on the testimony of an accomplice. An accomplice's testimony must be corroborated by other evidence that tends to connect the defendant with the commission of the offense. (§ 1111.) The jury was instructed that defendants could be found guilty of first degree murder based on either of two theories: malice aforethought, or felony-murder based on robbery, attempted robbery, and/or burglary. The only evidence that the defendants intended to rob Johnson via a planned surprise attack came through Matthews's testimony. Lemmon argues there is insufficient evidence of first degree murder because absent Matthews's uncorroborated testimony, there is no evidence of Lemmon's mental state, i.e., no evidence Lemmon intended to kill or intended to steal from anyone, and no evidence of malice or lying in wait.
>
> We first consider the argument as to felony-murder. The mental state the prosecution is required to prove for a conviction of first degree murder is that the defendant had the specific intent to kill, and acted with premeditation and deliberation. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1223.) However, under the felony-murder

9

rule, the ordinary mental-state elements of first degree murder are eliminated, and the only criminal intent required to be proved is the specific intent to commit the particular underlying felony. (*People v. Chavez* (2004) 118 Cal.App.4th 379, 385.) This means that for the jury to properly convict under a felony-murder theory, the only criminal intent the prosecution was required to prove was that defendant had the specific intent to commit robbery, attempted robbery, or burglary. Lemmon argues the only evidence of an intent to commit one of these crimes came solely from the testimony of accomplice Matthews. He argues that other than Matthews's testimony, the evidence was that his intent in going to the Hilltop Lodge and in using the pepper spray in the victim's motel room was solely to retrieve his girlfriend's property.

Lemmon misconstrues the corroboration requirement. It is not necessary that there be independent corroborative evidence sufficient to establish every element of the offense. (*People v. Luker* (1965) 63 Cal.2d 464, 469.) Nor is it necessary there be independent corroborative evidence sufficient to establish every fact to which the accomplice testifies. (*Ibid.*) Instead, there need only be independent evidence that tends to connect the defendant with the commission of the offense, so as to reasonably satisfy a jury that the accomplice is telling the truth. (*Ibid.*) "Although the corroborating evidence must do more than raise a conjecture or suspicion of guilt, it is sufficient if it tends in some degree to implicate the defendant." [Citation.] "[The] corroborative evidence may be slight and entitled to little consideration when standing alone. [Citation.] [Citation.] Finally, '[unless] a reviewing court determines that the corroborating evidence should not have been admitted or that it could not reasonably tend to connect a defendant with the commission of a crime, the finding of the trier of fact on the issue of corroboration may not be disturbed on appeal.'" (*People v. Szeto* (1981) 29 Cal.3d 20, 27.)

Here, there was sufficient evidence connecting Lemmon to the crime. He was observed leaving the Orion Way house with Freed and Matthews, saying he was going to pick up his girlfriend's clothes from her ex. Lemmon was seen by two witnesses at the Hilltop Lodge on the night of the murder, and was seen going into one of the downstairs rooms. He came back to the Orion Way house with Freed, who admitted to stabbing and possibly killing someone. His DNA was found on a pepper spray can in the victim's motel room, along with the victim's body. Additionally, "'Flight tends to connect an accused with the commission of an offense and may indicate that an accomplice's testimony is truthful.' [Citation.]" (*People v. Gonzalez* (2016) 246 Cal.App.4th 1358, 1378.) There was evidence Lemmon was discovered by a police dog hiding inside an old big-screen television cabinet. This was sufficient to reasonably tend to connect Lemmon with the commission of the crime.

For the same reason, it was not necessary to have independent evidence of lying in wait or malice. All that was needed was corroborating evidence that tended to connect Lemmon to the commission of the crime. Because there was evidence connecting Lemmon to the commission of the crime, it was not necessary to have

independent corroboration of Lemmon's intent either under a felony-murder or premeditation/lying-in-wait theory.

Lemmon also makes the argument that there was no evidence, other than Matthews's testimony, of a robbery or burglary because there was no evidence anything was stolen. This is untrue. There was evidence that Johnson had his driver's license when he checked in at the motel. However, none of Johnson's belongings were found in the motel room, and his driver's license was eventually found in the trash at an RV park. The jury could have reasonably inferred, apart from Matthew's testimony, that Johnson would have had some personal belongings with him in the motel room, and that those personal belongings included the backpacks containing men's toiletries given to Porras by Freed.

(People v. Lemmon, slip op., ECF No. 14-18 at 10-13.)

Legal Standards & Analysis

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Thus, one who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. Herrera v. Collins, 506 U.S. 390, 401-02 (1993). Nevertheless, the petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Federal habeas relief is available only if the state court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson. Juan H., 408 F.3d at 1275 n.13.

Habeas claims based upon alleged insufficient evidence therefore "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). As noted by the Supreme Court:

First, on direct appeal, "it is the responsibility of the jury−not the court−to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

(Citations omitted).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution and must defer to that resolution. Jackson, 443 U.S. at 326.

Under Jackson, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. Schlup v. Delo, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under Jackson, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1 (2011) (per curiam). Jackson "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Id. at 2. Under Cavazos, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. at 2 (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Significantly, the United States Supreme Court has held that "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." Caminetti v. United States, 242 U.S. 470, 495 (1917); see United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face"). "When we look at the

1    requirements of procedural due process, the use of accomplice testimony is not catalogued with

2    constitutional restrictions." United States v. Augenblick, 393 U.S. 348, 352 (1969). Hence, the

3    requirement of California Penal Code § 1111 that "'a conviction cannot be had upon the

4    testimony of an accomplice unless it be corroborated' is a matter of state law, which does not

5    implicate a federal constitutional right" and cannot be the basis of federal habeas relief. Barco v.

6    Tilton, 694 F. Supp. 2d 1122, 1136 (C.D. Cal. 2010).

7         California's statutory law prohibiting convictions based solely on uncorroborated

8    accomplice testimony is only a state law rule: it is not required by Constitution or federal law.

9    See Laboa v. Calderdon, 224 F.3d 972, 979 (9th Cir. 2000). Therefore, because petitioner's claim

10   is grounded in the state law requirement that accomplice testimony be corroborated, he cannot

11   show a constitutional violation based on the alleged inadequate corroboration. Takacs v. Engle,

12   768 F.2d 122, 127 (6th Cir. 1985) ("If uncorroborated accomplice testimony is sufficient to

13   support a conviction under the Constitution, there can be no constitutional right to instruct the

14   jury that it must find corroboration for an accomplice's testimony"); see also United States v.

15   Fritts, 505 F.2d 168, 169 (9th Cir. 1974) (holding on direct review that trial court's failure sua

16   sponte give cautionary instruction on accomplice testimony did not warrant reversal). See

17   Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's

18   interpretation of state law, including one announced on direct appeal of the challenged conviction,

19   binds a federal court sitting in habeas corpus").

20        Moreover, a review of the record reveals the Court of Appeal's determination that there

21   exists corroborating testimony so as to provide sufficient evidence for purposes of petitioner's

22   murder conviction is adequately supported. There is independent evidence tending to connect

23   petitioner with the commission of the offenses of which he was convicted; it is more than

24   evidence that merely raises a conjecture or suspicion of guilt. (See, e.g., testimony of witnesses

25   Deckard, Ellis, Gaxiola, Harney, Lowrey, Matthews, R., Mills, M.)

26        A review of this record confirms the state court's determination was reasonable. A

27   rational trier of fact could have found the essential elements of the crimes of murder, robbery and

28   burglary beyond a reasonable doubt. Jackson, 443 U.S. at 319. The jury's conclusions are

13

supported by substantial evidence and are entitled to this court's deference. <u>Bruce v. Terhune</u>, 376 F.3d at 957. There was evidence, accepted as credible by the jury, sufficient to sustain petitioner's convictions. <u>Schlup v. Delo</u>, 513 U.S. at 330.

For the same reasons persuasively articulated by the Court of Appeal in finding that there was sufficient independent evidence to convict petitioner of first degree murder, there was more than ample evidence to satisfy the requirements of <u>Jackson</u> with respect to those convictions. <u>Cavazos</u>, 565 U.S. at 1-2.

In sum, petitioner is not entitled to relief because his claim cannot establish a constitutional violation based on alleged inadequate corroboration of an accomplice's testimony. <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law"). Neither has petitioner established that the state court's determination that there was sufficient evidence to support his conviction was unreasonable or contrary to Supreme Court precedent, nor were the state court's factual determinations unreasonable. 28 U.S.C. § 2254. Petitioner is thus not entitled to relief on his claim and the undersigned hereby recommends ground one be denied.

B. *The Sufficiency of the Evidence Pertaining to the Robbery & Burglary Convictions*

Petitioner claims there is insufficient evidence to support his convictions for robbery and burglary and the attendant special circumstances finding, because, like the claim asserted in ground one, "the only evidence … came from the uncorroborated testimony of accomplice Matthews." (ECF No. 1 at 22-23.) Respondent maintains that the state court's determination of this claim was reasonable. (ECF No. 11 at 19-20.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> B. There Was Sufficient Evidence to Support the Special Circumstance Finding
>
> Lemmon was sentenced to life without the possibility of parole because the jury found true the special allegations that Johnson's murder occurred during the commission of robbery and burglary.

Lemmon argues that the prosecution was required to prove the corpus delicti of the robbery and burglary, and that it could not do so with the uncorroborated testimony of Matthews. As shown above, there was sufficient corroborating evidence of robbery and burglary because there was evidence connecting Lemmon to the crimes.

Even if there were not any corroborating evidence of the robbery and burglary, we would not reverse. The corpus delicti rule states that the prosecution must prove the fact of injury and the existence of a criminal agency as its cause, and cannot rely exclusively on the extrajudicial statements of the defendant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-69.) The rule also applies to the extrajudicial statements of a codefendant. (*Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 396-97.) However, the rule is applicable only to extrajudicial statements. Here, there was in-court testimony from Matthews, thus the corpus delicti rule was satisfied.

(People v. Lemmon, slip op., ECF No. 14-18 at 13.)

Legal Standards and Analysis

The standards concerning sufficiency of the evidence and accomplice testimony were provided above. And, the corroborative evidence, in fact, was adequate to connect petitioner with the crimes. Notably, the corroborative evidence required by California Penal Code § 1111 "need not corroborate every fact to which the accomplice testified or establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy a fact finder the accomplice is telling the truth." People v. Williams, 16 Cal.4th 153, 246 (1997) (amended Sept. 24, 1997); see also Odle v. Calderon, 884 F. Supp. 1404, 1418 (N.D. Cal. 1995) (petitioner's claim that his murder conviction relies solely on uncorroborated testimony does not establish basis for federal habeas relief).

Petitioner's claim in ground two is predicated on the success of his claim in ground one. However, because the undersigned determined petitioner is not entitled to relief in ground one, ground two necessarily suffers the same fate. Because there exists no clearly established Supreme Court rule requiring that accomplice testimony be corroborated, and because the Court of Appeal's determination that sufficient evidence supported petitioner's robbery and burglary convictions, the state court's determination is neither contrary to, nor does it involve an

unreasonable application of, Supreme Court precedent.  28 U.S.C. § 2254.  Hence, petitioner is not entitled to relief and it is hereby recommended that the claim asserted in ground two be denied.

    C.    *The Mistake of Fact Defense*

Petitioner asserts that the trial court's failure to instruct the jury concerning a mistake of fact defense violated his due process rights.  Relatedly, he argues that trial counsel provided ineffective assistance by failing to request an instruction on the mistake of fact defense.  (ECF No. 1 at 24-26.)  In reply, respondent argues the state court's denial of petitioner's claim involved the application of state law and therefore the state court's adjudication of the claim is binding on this court.  Further, respondent argues, trial counsel cannot be said to have provided ineffective assistance for failing to request a mistaken of fact defense instruction to which petitioner was not entitled.  (ECF No. 11 at 20-21.)

Addressing this issue, the Third District Court of Appeal determined as follows:

> Both Defendants argue the trial court erred in failing to sua sponte instruct the jury on the defense of mistake of fact with respect to the robbery and burglary counts. Lemmon argues: "The prosecution's case against [him] was a house of cards built on the prosecution's theory that appellant committed, aided and abetted, or conspired to commit robbery and burglary. To keep this house of cards from collapsing, the prosecution had to prove [he] intended to deprive Johnson of his property permanently." Defendants argue that since there was evidence their intent was merely to retrieve Welcher's belongings, and not steal Johnson's belongings, the trial court erred when it did not sua sponte give a mistake of fact defense.[4] Defendants further argue their trial counsel was ineffective in failing to request a mistake of fact instruction.
>
> > [FN. 4] CALCRIM No. 3406, the mistake of fact instruction, provides:
> >
> > "The defendant is not guilty of _____ <insert crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.
> >
> > "If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ <insert crime[s]>.
> >
> > "If you find that the defendant believed that _____ <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or

16

mental state required for _____ <insert crime[s]>.

"If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)."

However, even if the backpacks had contained Welcher's belongings, this fact would not have made the robbery or burglary an innocent act. "It is no defense to a charge of robbery (or of theft) that the victim was not the true owner of the property taken. Theft can be committed against one who was himself a thief." (*People v. Moore* (1970) 4 Cal.App.3d 668, 669.) Neither a victim's illegal acquisition, nor illegal possession of property precludes a larceny conviction. (2 Witkin, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 22, p. 46; see also *People v. Nelson* (1880) 56 Cal. 77, 82 [" 'If A steal goods from B, and C afterward steals the same goods from A, C is a felon both as to A and B.' [Citation.]"].)

Thus, the trial court had no duty to give a mistake of fact instruction because even if Johnson's backpacks had contained Welcher's property, the act of barging into Johnson's motel room and forcibly taking the backpacks from Johnson's possession would not have been an innocent act. It necessarily follows that defendants' trial counsel were not ineffective for failing to request the instruction.

(People v. Lemmon, slip op., ECF No. 14-18 at 18-20.)

Applicable Legal Standards

In California, the "'defense' of mistake of fact requires, at a minimum, an actual belief 'in the existence of circumstances, which, if true, would make the act with which the person is charged an innocent act....' [Citations.]" People v. Lawson, 215 Cal. App. 4th 108, 115 (2013).

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "It is not the province of a federal court to reexamine state court determinations of state law questions." Estelle, 502 U.S. at 71-72. "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006). "[A] petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

////

Applying federal common law and the federal rules of criminal procedure, the United States Supreme Court has held, "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988).  No federal precedent requires, however, that a state trial court instruct, sua sponte, on affirmative defenses in a criminal trial where unsupported by the evidence.

Where the alleged error is the failure to give an instruction, the burden on the petitioner is "especially heavy" because "an omission ... is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977); Clark v. Brown, 450 F.3d at 904; see also Duckett v. Godinez, 67 F.3d 734, 746 (9th Cir. 1995) ("We ask whether, under the instructions as a whole and given the evidence in the case, the failure to give the [omitted] instruction rendered the trial so fundamentally unfair as to violate federal due process" (citing Cupp v. Naughton, 414 U.S. 141, 147 (1973)).  Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand.  O'Neal v. McAninch, 513 U.S. 432, 437 (1995).

A federal court's review of a claim of instructional error is highly deferential.  Masoner v. Thurman, 996 F.2d 1003, 1006 (9th Cir. 1993).  A reviewing court may not judge the instruction in isolation but must consider the context of the entire record and of the instructions as a whole.  Id.  The mere possibility of a different verdict is too speculative to justify a finding of constitutional error.  Henderson, 431 U.S. at 157.  "Where the jury verdict is complete, but based upon ambiguous instructions, the federal court, in a habeas petition, will not disturb the verdict unless 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Solis v. Garcia, 219 F.3d 922, 927 (9th Cir. 2000) (quoting Estelle, 502 U.S. at 72).

"A 'substantial and injurious effect' means a 'reasonable probability' that the jury would have arrived at a different verdict had the instruction been given."  Byrd v. Lewis, 566 F.3d 855,

860 (9th Cir. 2009) (quoting <u>Clark</u>, 450 F.3d at 916). To determine if petitioner was prejudiced, the court will consider: "(1) the weight of evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." <u>Id.</u> (citing <u>Beardslee v. Woodford</u>, 358 F.3d 560, 578 (9th Cir. 2004). The burden on Petitioner "is especially heavy where ... the alleged error involves the failure to give an instruction." <u>Id.</u> (quoting <u>Clark</u>, 450 F.3d at 904) (internal citations omitted).

Analysis

As a preliminary matter, any contention that either the trial court or the Court of Appeal erred in their application of state law is not cognizable on federal habeas review. <u>See Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law."); <u>see also</u> <u>Estelle</u>, 502 U.S. 62 at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Therefore, the only relevant question is whether the omission of a mistake of fact jury instruction violated petitioner's due process rights.

On this record, the weight of the evidence that contradicts a mistake of fact defense is not insignificant. The jury found Matthews's testimony credible – and that testimony included petitioner's understanding, by way of knowledge imparted by his girlfriend, that the victim had a large sum of cash and drugs in his possession. This evidence contradicts the basis for petitioner's defense that he merely sought to get his girlfriend's belongings back by going to the victim's room. And, as the court of appeal correctly pointed out, even if petitioner's asserted defense was accepted – that he just wanted to get his girlfriend's things back – a mistake of fact defense would not completely absolve petitioner because he had no legal right to that property, despite trial counsel's argument to the contrary. <u>Byrd v. Lewis</u>, 566 F.3d at 860.

In this case, even assuming the trial court erred in omitting the instruction on mistake of fact, petitioner has failed to show that the alleged error "so infected the entire trial that the resulting conviction violated due process." <u>See Estelle</u>, 502 U.S. at 71-72.

The trial court advised the jury regarding the presumption of innocence and the prosecution's burden of proving all elements beyond a reasonable doubt; it instructed the jury

regarding the requirements for finding petitioner guilty of murder, robbery and burglary, aiding and abetting, conspiracy, credibility of witnesses, and a claim of right defense. (See ECF No. 14-1 at 162-227 & 14-7 at 518-59.) Additionally, in closing argument, defense counsel referenced petitioner's specific defense theory that he was merely trying to retrieve his girlfriend's property no less than nine times. (See ECF No. 14-8 at 52 ["Kevin Lemmon went to the Hilltop Lodge to lawfully retrieve Amanda Welcher's belongings"] & ["Mr. Lemmon wanted to obtain Amanda Welcher's clothes and belongings from Mr. Johnson's motel room"]; 14-8 at 53 ["It's undisputed that Mr. Matthews and Mr. Freed agreed to go with him for the purpose of lawfully obtaining Ms. Welcher's belongings"]; 14-8 at 55 ["You can't aid and abet or conspire to do something that is legal. There is no aiding and abetting going to retrieve someone's belongings lawfully. There's no conspiracy to commit a lawful act of picking up someone's belongings"] & ["If you look at Mr. Deckard's testimony that Mr. Lemmon wanted to pick up Amanda's clothes, again this is undisputed"] & ["Ms. Lowrey's testimony was the same. She heard Mr. Lemmon wanted help getting Amanda's stuff"]; 14-8 at 56 ["when it comes to robbery, we're talking about taking something from an owner. You have to have this intent to deprive the owner of that property, of his possession -- or his ownership of that, and we don't have that in this case. [¶] Again, we go back to Mr. Deckard and Ms. Lowrey. The goal was recovering Amanda's clothes. Mr. Lemmon had a claim of right to Amanda Welcher's property. There is no dispute whatsoever that Ms. Welcher wanted Mr. Lemmon to get these -- this clothing whether it be in bags or duffel bags or what have you. Ms. Welcher's property was the only goal, not this 1500, 1900 dollars, drugs or anything belonging to Mr. Johnson. All the testimony prior to getting to the motel discussed nothing but getting Amanda's stuff back for her at her request; and because he only wanted to obtain Amanda's belongings, he didn't have the intent to deprive the owner of anything. He wanted to get Amanda, the owner, her stuff back"]; 14-8 at 57 (discussing burglary) ["There's no intent there. There's in intent to take something from its rightful owner. And theft, again, we're not talking about Mr. Johnson's belongings. There was no intent to take that. There was intent to take Ms. Welcher's things back"]; 14-8 at 60-61 ["Mr. Lemmon had no intent to rob anybody, just to get Amanda's clothes"]; 14-8 at 70 ["What does make sense is exactly what you've heard. Mr.

Lemmon wanted to help his girlfriend get her clothes back from an ex-boyfriend. It's just that simple"].)

Therefore, in light of the trial record and the jury instructions as a whole, the jury was adequately informed regarding the defense's theories, and by finding petitioner guilty under the given instructions, the jury necessarily found that petitioner was not acting under a mistake of fact or claim of right. See United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990) ("it is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory"), overruled in part on other grounds in Dixon v. United States, 548 U.S. 1 (2006).

Because no basis exists for concluding that the jury would have found petitioner not guilty had the trial court instructed it with a mistake of fact defense, any error was harmless. Brecht, 507 U.S. at 637; O'Neal v. McAninch, 513 U.S. at 437.

Relatedly, because, even assuming error, the error was harmless, petitioner cannot prevail on a claim that trial counsel was ineffective for failing to request the jury instruction at issue. For a petitioner to prevail on an ineffective assistance of counsel claim, he must show: (1) that counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently prove one of them. Id. at 697. For the same reasons petitioner cannot establish prejudice as to the trial court's asserted failure, he cannot establish a reasonable probability that but for trial counsel's asserted error, the result of the proceeding would have been different. Id. at 687.

To conclude, for the reasons given above, petitioner is not entitled to habeas relief. 28 U.S.C. § 2254. The undersigned recommends this claim be denied.

D.    *The Trial Court's Limitation Regarding Matthews' Prior Misdemeanor*

In his fourth claim for relief, petitioner argues his constitutional rights to confrontation, to present a defense and to due process were violated by the trial court's refusal to allow counsel to cross examine Matthews regarding his misdemeanor conviction for annoying or molesting a child

21

in violation of California Penal Code § 647.6.  (ECF No. 1 at 26-28.)  Respondent replies the state

court reasonably determined that the trial court's limitation of the evidence did not violate

petitioner's constitutional rights, preventing relief.  (ECF No. 11 at 21-25.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of

Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

this claim as follows:

> Matthews's Prior Misdemeanor
>
> On direct examination the prosecutor asked Matthews to describe his prior felony convictions. His response was: "Uhmmm, possession of drugs. Uhmmm, let's see. I have a -- I believe it's a 288. [¶] . . . [¶] . . . And I believe I have a -- I'm not sure if it's a felony, but I believe I have an arson charge on my record, too." Also during direct examination Matthews admitted to being a drug addict, and to using methamphetamine at the time of the crime. On cross-examination Freed's attorney mentioned the section 288 and asked Matthews, "What is that?" The trial court sustained the prosecution's relevance objection.
>
> Out of the jury's presence, the prosecutor told the trial court that Matthews's rap sheet indicated he had been charged with a violation of section 288, subdivision (a), a lewd or lascivious act on a child under the age of 14, but had been convicted of misdemeanor annoying or molesting a child. (§ 647.6.) Neither the prosecutor nor the defense attorneys knew the underlying facts of the conviction. The court told defense counsel that if they could find the background information in a police report, then the information might come in. Otherwise, they were limited to discussing the fact that he suffered a misdemeanor that involved annoying or molesting a child under the age of 18.
>
> Freed's counsel then argued the information was admissible to show Matthews's state of mind as to why he came up with the story he told bystanders at the motel that they were helping a 14-year-old girl, and why he was interested in the pornographic DVD's that were in one of the backpacks. The trial court stated that Matthews's knowledge or belief about his arrest was not relevant. The court stated it was tangential and that it did not see the connection.
>
> Freed, joined by Lemmon argues the trial court abused its discretion when it refused to allow defense counsel to inquire into the facts underlying Matthews's misdemeanor conviction.
>
> The fact of a misdemeanor conviction is inadmissible under traditional hearsay rules to impeach the truthfulness of a witness, although Evidence Code section 451.5 states a hearsay exception for certified official records of conviction. (*People v. Wheeler* (1992) 4 Cal.4th 284, 288; *People v. Duran* (2002) 97 Cal.App.4th 1448, 1461.) However, the trial court has broad discretion to admit or

exclude the acts of dishonesty or moral turpitude underlying a misdemeanor conviction pursuant to Evidence Code section 352. (*Wheeler*, at pp. 288, 295, 298-299.) Evidence Code section 352 grants the trial court discretion to exclude a prior conviction where the "probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Where the witness subject to impeachment is not the defendant, factors bearing on whether the conviction is probative are whether the conviction reflects on honesty and is near in time. (*People v. Clair* (1992) 2 Cal.4th 629, 654; *People v. Woodard* (1979) 23 Cal.3d 329, 337, superseded by statute on another ground as recognized by *People v. Castro* (1985) 38 Cal.3d 301, 307-310.) Neither of these factors was met here. The trial court determined that Matthews's 2006 conviction was not near in time. We agree that while the conviction was not in the distant past, it also was not particularly recent. Plus, the conviction for annoying or molesting a child did not necessarily reflect on the witness's honesty. "Only a conviction which has as a necessary element an intent to deceive, defraud, lie, steal, etc., impacts on the credibility of a witness." [Citation.] It is not sufficient that the prior offense shows a "disrespect for law" or a "character trait of willingness to do anything." [Citation.]' [Citation.]" (*Castro*, at p. 325.) Annoying or molesting a child pursuant to section 647.6 requires only annoying or molesting a child under 18, and does not require any intent to deceive, defraud, lie, or steal. Thus, the facts underlying the misdemeanor had little probative value in this case.

The trial court acted well within its considerable discretion in determining that delving into Matthews's prior misdemeanor conviction would unduly confuse the issues and mislead the jury, given its lack of probative value.

As for defendants' argument that the prior conviction was admissible to show Matthews's state of mind when he made up a story to tell bystanders involving a 14-yearold girl, Matthews's state of mind was simply not relevant. As the trial court stated, "that's so tangential that I don't see the connection."

In addition to arguing that the trial court abused its discretion, defendants argue that in denying their right to cross-examine Matthews about his misdemeanor offense, the trial court violated their Sixth Amendment rights and due process rights. We disagree.

"[N]ot every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance. [Citations.] . . . Thus, unless the defendant can show that the prohibited cross-examination would have produced 'a significantly different impression of [the witnesses'] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment."

(*People v. Frye* (1998) 18 Cal.4th 894, 946, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Here, Matthews admitted two and possibly three felony convictions. As it happened, one of the supposed felonies was not a felony at all, but was the misdemeanor at issue. He also admitted he was a drug addict, had used methamphetamine most of his life, and was smoking at least a quarter gram of methamphetamine a day at the time of the murder. Defendants have not shown that the addition of the facts underlying Matthews's misdemeanor conviction for annoying or molesting a minor would have given the jury a significantly different impression of his credibility. Accordingly, there was no Sixth Amendment violation.

As to defendants' due process argument, we have determined that the trial court did not abuse its discretion, thus the cross-examination was properly excluded under Evidence Code section 352. "As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense. Courts retain, moreover, a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice." (*People v. Hall* (1986) 41 Cal.3d 826, 834.) The trial court's exercise of discretion did not deny defendants' due process.

(People v. Lemmon, slip op., ECF No. 14-18 at 20-23.)

Relevant Legal Standards

The Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes. [Citations.]" Nevada v. Jackson, 569 U.S. 505, 512 (2013). The high court explained:

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, but we have also recognized that state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.

Id., at 509 (internal citations & quotation marks omitted). Said another way, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. See Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

////

24

Supreme Court precedent holds that defendants have a constitutional right to present relevant evidence in their own defense. See Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks omitted). The Supreme Court has indicated that a defendant's right to present a defense stems both from the right to due process provided by the Fourteenth Amendment, see Chambers v. Mississippi, 410 U.S. 284, 294 (1973), and from the right "to have compulsory process for obtaining witnesses in his favor" provided by the Sixth Amendment, see Washington v. Texas, 388 U.S. 14, 23 (1967) (explaining that the right to compulsory process would be meaningless if the defendant lacked the right to use the witnesses whose presence he compelled).

However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such as evidentiary and procedural rules. United States v. Scheffer, 523 U.S. 303, 308 (1998). In fact, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," id., and the Supreme Court has indicated its approval of "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury," Holmes v. South Carolina, 547 U.S. 319, 326 (2006). Evidentiary rules do not violate a defendant's constitutional rights unless they "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." Id. at 324 (alteration in original) (internal quotation marks omitted); see also Scheffer, 523 U.S. at 315 (explaining that the exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only where it "significantly undermined fundamental elements of the accused's defense"). In general, it has taken "unusually compelling circumstances . . . to outweigh the strong state interest in

administration of its trials." <u>Perry v. Rushen</u>, 713 F.2d 1447, 1452 (9th Cir. 1983).

The Supreme Court has not squarely addressed the question whether an evidentiary rule requiring a trial court to balance factors and exercise its discretion "infring[es] upon a weighty interest of the accused" and is "arbitrary or disproportionate to the purposes [it is] designed to serve." <u>Moses v. Payne</u>, 555 F.3d 742, 758 (9th Cir. 2009) (quoting <u>Scheffer</u>, 523 U.S. at 308) (internal quotation marks omitted). Rather, as a "well-established rule[ ] of evidence" that permits a court to exercise its discretion in excluding "evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury," California Evidence Code § 352 is more analogous to those evidentiary rules described with approval in <u>Holmes</u>. <u>See</u> <u>Holmes</u>, 547 U.S. at 326 ("While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury").

A state court's admission of evidence under state evidentiary law will form the basis for federal habeas relief only where the evidentiary ruling "so fatally infected the proceedings as to render them fundamentally unfair" in violation a petitioner's due process rights. <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991). "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief." <u>Id.</u>

The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990), and "has made very few rulings regarding the admission of evidence as a violation of due process."

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). It has opted not to hold that evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of law." Estelle, 502 U.S. at 75 & n.5 (noting that the Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Moreover, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley, 568 F.3d at 1101 (citing Carey v. Musladin, 549 U.S. at 77). In the absence of clearly established law that admission of even overtly prejudicial evidence constitutes a due process violation, the court cannot conclude that the state court's ruling was an "unreasonable application." Id.; see also Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (holding that because the Supreme Court has expressly reserved the question of whether using evidence of a defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process, the state court did not unreasonably apply clearly established law in determining that the admission of defendant's criminal history did not violate due process). A federal court is "without power" to grant a habeas petition based solely on the admission of evidence. Id.

Even setting aside the issue of clearly established federal law, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended, 421 F.3d 1154 (9th Cir. 2005). Again, "'[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'" Holley, 568 F.3d at 1101. "Only if there are no permissible inferences the jury may draw from evidence can its admission violate due process." Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir. 2003) (emphasis in original); Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999). "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" Jammal v. Van de Kamp, 926 F.2d at 920 (citation omitted). That can only occur if the admission of the evidence had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. at 776).

1    <u>Analysis</u>

2         Insofar as petitioner is claiming state law error in limiting the impeachment evidence,

3    such a claim is not cognizable on federal habeas review.  <u>Estelle</u>, 502 U.S. at 67; <u>Jammal v. Van</u>

4    <u>de Kamp</u>, 926 F.2d at 919 ("We are not a state supreme court of errors; we do not review

5    questions of state evidence law").  The only cognizable question then is whether the trial court's

6    limitation of the evidence was so fundamentally unfair as to violate petitioner's rights.

7         The undersigned has reviewed Matthews' testimony relevant to this claim.  (<u>See</u> ECF No.

8    14-6 at 491 [asked on direct about prior convictions, Matthews responds "Uhmmm, possession of

9    drugs.  Uhmmm, let's see. I have a -- I believe it's a 288"]; 14-6 at 592 [during cross examination,

10   the following exchange occurred: "Q. You told us that you had something about a 288 in your

11   history?  A. Correct.  Q. What is that?  A. I was - - [PROSECUTOR]: Objection.  Relevance.

12   THE COURT: Well, it's - - gentlemen, approach;" a bench conference was then held].)

13   Additionally, the undersigned has reviewed the colloquy between the court and counsel regarding

14   Matthews prior convictions.  (<u>See</u> ECF No. 14-6 at 614-25).  Following review, the undersigned

15   concludes the state court's determination was neither unreasonable nor contrary to Supreme Court

16   precedent.

17        The Court of Appeal's determination that petitioner's right to confrontation was not

18   violated is reasonable and entitled to this court's deference.  The trial court's limitations did not

19   act to foreclose petitioner's right to confrontation or cross examination.  Matthews' direct

20   examination testimony on this conviction referenced a California statute more egregious than the

21   actual statute under which he was convicted.  More particularly, when asked what "felony

22   crimes" he had been convicted of, Matthews replied, "possession of drugs … [and] a 288."  He

23   also stated he had been convicted of "arson"[5] although he did not know whether it was a felony.

24   (ECF No. 14-6 at 491.)  In reality, Matthews had not been convicted of "a 288;" rather, he had

25   been convicted of a misdemeanor violation of California Penal Code § 647.6.  Further, no one had

26   any information concerning the facts of the conduct involved in that misdemeanor conviction.

27   _____

28   [5] The discovery available in the form of Matthews's rap sheet did not include a conviction for
     arson.

Petitioner had an opportunity to effectively cross examine Matthews and did so.  Petitioner does not have a right to "cross-examination that is effective in whatever way, and to whatever extent" (Fensterer, 474 U.S. at 20), he might wish.

Here, the evidentiary rules under which the trial court limited the cross examination do not fall into any of the categories of evidentiary rules struck down by the Supreme Court.  The trial court excluded the proposed questioning pursuant to California Evidence Code § 352, which necessarily involved the exercise of discretion.  That section requires the trial court to balance the evidence's probative value against its potential to cause prejudice, confusion, and undue consumption of time.  The trial court considered lengthy arguments regarding the proposed evidence and, only after doing so, concluded that evidence was inadmissible.  Because no Supreme Court case has squarely held that the exclusion of evidence under these circumstances violates a criminal defendant's right to present a defense, the state court's holding could not have been an unreasonable application of clearly established federal law as determined by the Supreme Court. See Carey, 549 U.S. at 77.

Further, petitioner is not entitled to habeas relief because United States Supreme Court precedent does not clearly establish that admission of this type of evidence violates due process. See Holley v. Yarborough, 568 F.3d at 1101.  "Absent such 'clearly established Federal law,'" the Ninth Circuit in Holley could not "conclude that the state court's ruling was an unreasonable application" of federal precedent.  Id. (quoting Carey v. Musladin, 549 U.S. at 77).

Although the undersigned agrees with petitioner that the jury's evaluation of the credibility of Matthews was a critical factor at trial, the undersigned is convinced the jury would not have received a significantly different impression of the witness's veracity even if the conduct evidence had been admitted.  See People v. Whisenhunt, 44 Cal.4th 174, 207–08 (2008).  In light of the other evidence admitted regarding Matthews's criminal record – including the fact he pled guilty to involuntary manslaughter and robbery in connection with this same incident pursuant to an agreement with the People and was himself facing a state prison sentence between six and thirteen years (ECF No, 14-6 at 488-90) - and his drug-based lifestyle, preclusion of this particular evidence did not deprive petitioner of a fair trial.

In sum, the Court of Appeal's rejection of petitioner's evidentiary error claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court. 28 U.S.C. § 2254. Accordingly, federal habeas relief on ground four should be foreclosed.

E.    *Admission of Testimony Regarding Interaction Between Witness and Freed*

In his fifth ground for relief, petitioner complains that the trial court violated due process by allowing a law enforcement witness to testify concerning witness Porras's actions toward co-defendant Freed while on the stand. (ECF No. 1 at 28-29.) Respondent maintains the state court's determination was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. (ECF No. 11 at 25-27.)

In rejecting petitioner's claim, the Third Appellate District reasoned as follows:

Evidence Regarding Porras

Ismael Porras, the man who was given the backpacks, testified under a grant of immunity after invoking his Fifth Amendment right. He testified that he was a friend of Freed's, but that he did not know Lemmon until he came to jail. He claimed he remembered very little of the events surrounding the crime, nor did he remember giving police an interview shortly after the murder. When the prosecutor asked him if his reluctance to testify was due to his not wanting to be labeled a snitch when he returned to prison, he answered that he did not want to testify because he did not have any information.

Later, outside the presence of the jury, the prosecutor made an offer of proof that its investigating officer observed Porras make eye contact and smile and nod at Lemmon when he came into the courtroom, and smile, make eye contact and shake his head at Freed. The trial court allowed the investigating officer to testify to what he saw, but did not allow the officer to interpret what he saw.

Lemmon objected that the probative value of the evidence was outweighed by its prejudice. Freed objected that the evidence was cumulative because his client and Porras were friends.

The investigator testified that when Porras came into the courtroom, he saw "Mr. Porras make eye contact with Mr. Lemmon and then smile and nod his head." He testified that at the end of Porras's testimony he observed Porras make "eye contact with Mr. Freed and then shook his head in a left to right fashion."

Defendants now argue that the trial court abused its discretion in allowing the testimony because the probative value of the testimony was outweighed by its potential for prejudice. Defendants argue the probative value, which consisted of the testimony's tendency to

suggest Porras was deliberately not remembering what happened, was so slight that its relevance was nonexistent. Defendants argue the potential for prejudice was great because it could have led the jury to believe Porras knew Freed had committed the crimes.

We disagree. It is the defendants' burden to establish an abuse of discretion. (*Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1307.) In the absence of a clear showing that the trial court's decision was arbitrary or irrational, we presume it acted to achieve legitimate objectives, and will not set aside its discretionary determinations. (*Ajaxo Inc. v. E*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 45.)

We agree with the trial court that the evidence had some probative value because of Porras's failure to remember anything of value when he testified. The investigator's evidence was relevant to show that Porras's lack of memory was feigned. We fail to follow the logic that it also implied Freed was guilty. Consequently, we find no abuse of discretion.

(People v. Lemmon, slip. op., ECF No. 14-18 at 23-25.)

Legal Standards & Analysis

Again, insofar as petitioner can be understood to claim state law error in allowing Detective Williams's testimony regarding his observations during Porras's testimony, the claim is not cognizable on federal habeas review. Estelle, 502 U.S. at 67; Holley, 568 F.3d at 1101; Jammal, 926 F.2d at 919. The only cognizable question then is whether the trial court's admission of the evidence was so fundamentally unfair as to violate petitioner's rights.

The undersigned has reviewed the testimony of both Porras and Investigator Williams (ECF No. 14-6 at 370-87, 480-86 & ECF No. 14-7 at 366-75), as well as the parties' arguments and the trial court's ruling concerning the parameters of Williams's testimony regarding his observations of Porras's court testimony (ECF No. 14-7 at 279-85). Following that review, the undersigned finds the admission of the evidence did not render the trial so fundamentally unfair that it warrants issuance of the writ. Williams v. Taylor, 529 U.S. at 375. Porras's testimony was peppered with claims of a failure to remember his own actions; the undersigned counted more than four dozen instances occurring during Porras's relatively brief direct examination. The state court's finding that there was some probative value to Williams's testimony concerning his observations was not unreasonable where the information was relevant to show Porras's claimed lack of memory was a pretense.

31

To conclude, the state court's determination of petitioner's claim did not involve an unreasonable determination or contrary application of Supreme Court precedent. 28 U.S.C. § 2254. As a result, the undersigned recommends that the claim asserted in ground five of the petition be denied.

F. *Ineffective Assistance of Counsel for a Failure to Move for Mistrial*

Next, petitioner asserts trial counsel provided ineffective assistance of counsel when he failed to move for mistrial following a witness's testimony concerning co-defendant Freed and that the Court of Appeal's rejection of the claim was unreasonable. (ECF No. 1 at 29-30.) Respondent contends the state court determination was reasonable. (ECF No. 11 at 27-28.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

No Ineffective Assistance of Counsel

During the direct examination of Deckard, the prosecutor asked about Freed's statement following the murder that he might have hurt someone. The prosecutor asked if Deckard believed he had actually hurt someone. Deckard began, "Billy has been known to fight people, but he hadn't fought anybody in . . ." when Freed's attorney interrupted. The trial court ordered the jury to disregard the statement, and said outside the presence of the jury that he did not want to draw more attention to the statement. Freed's attorney agreed that was the best course. The attorney made no motion for mistrial.

Freed now claims that his trial counsel's failure to move for a mistrial denied his right to effective assistance of counsel.

"'[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected. [Citations.]" (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

A mistrial motion should be granted if the court is apprised of prejudicial error that cannot be cured by admonition or instruction. (*People v. Haskett* (1982) 30 Cal.3d 841, 854.) Whether error is incurably prejudicial is a speculative matter, and the trial court has considerable discretion in ruling on mistrial motions. (*Ibid.*) "Accordingly, it would be a rare case in which the merits of a mistrial motion were so clear that counsel's failure to make the motion would

amount to ineffective assistance." (*Ibid*.)

For defendants to be successful in their claim of ineffective assistance, they would need to show that trial counsels' failure to move for mistrial was grounded in ignorance or misapplication of the law rather than tactical considerations, and that the motion bore a strong potential for success. (*People v. Haskett, supra*, 30 Cal.3d at pp 854-855.) Neither has been shown here.

It is highly improbable that the trial court would have granted the mistrial motion. The witness's statement was not highly prejudicial. In fact it indicated that Freed had reformed somewhat from his past fighting, and did not fight anymore. Also, the jury was instructed to disregard the statement, and there was no more mention of it. Nor have defendants offered any proof that trial counsel misunderstood or misapplied the law. It is more likely counsel realized the probability of a successful motion were minimal, and decided not to waste time and goodwill with the court on a losing argument.

For these reasons there was no ineffective assistance of counsel.

(People v. Lemmon, slip. op., ECF No. 14-18 at 25-26)

Legal Standards & Analysis

A petitioner seeking relief due to ineffective assistance of counsel must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. at 687. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. Wiggins v. Smith, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Furthermore, the Supreme Court has held that where habeas relief is sought based on the ineffective assistance of counsel in connection with proceedings in a state court, the petitioner must show that the state court's application of the Strickland standard was unreasonable. Richter, 562 U.S. at 101.

More specifically, an attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)); see also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient

performance").

*Deckard's Testimony Relevant to the Claim*

The following colloquy occurred during witness Deckard's direct examination by the People concerning a statement made to Deckard by Freed:

> [THE PEOPLE]: … let's talk about that specific incident. You said he was rambling; right?
>
> (The witness nods head up and down.)
>
> Q. Yes?
>
> A. Yes.
>
> Q. And he said something about he - - he might have hurt someone?
>
> A. I'm - - he said something about some guy and that he might have hurt him, yes.
>
> Q. Did you think anything of that when he made that statement?
>
> A. I thought he was crazy.
>
> Q. Did you believe he'd actually hurt anybody at that point?
>
> A. Uhmmm, no, I didn't know.
>
> Q. What? I'm sorry. You said what?
>
> A. Billy has been known to fight people, but he hadn't fought anybody in - -
>
> MR. BORGES: Your Honor - -
>
> THE COURT: Whoa, whoa. Folks, please disregard that. That was completely nonresponsive. Disregard it in its entirety.
>
> MR. BORGES: Can we approach for just a moment?
>
> THE COURT: Yes, you may.
>
> (DISCUSSION WAS HELD BETWEEN COUNSEL AND THE COURT OFF THE RECORD, AT THE BENCH AND OUT OF THE HEARING OF THE JURY.)

(ECF No. 14-6 at 203-04.) After the jury had been excused for the day, the trial court further instructed the witness to answer the questions asked and not to volunteer information. (ECF No. 14-6 at 205.) Thereafter, the trial court read the exchange into the record, noted its admonishment of the witness and the jury's instruction to disregard it, stating "I don't want to draw more

34

attention to it." (ECF No. 14-6 at 207-08.)  Counsel for Freed then stated the following:

> MR. BORGES:  And neither do I which is why, when this sort of thing happened, I was torn between doing what we had done and not doing anything at all.  I just want to make sure that - - since Mr. Deckard appears to be a little bit of a loose witness, I want to make sure that Mr. Hanna has done what I expect he's already done which is to make sure that Mr. Deckard understand the limitations of his testimony on this specific topic, and to make sure that we do our best to control him in the future and not give him any leeway.

(ECF No. 14-6 at 208.)  Counsel for petitioner expressed his similar concerns (ECF No. 14-6 at 209) to the court, which replied, in relevant part: "… you are all officers of the court, and I expect that out of you, and once again, I - - I don't see anything Mr. Hanna said leading into that response at all.  [¶]  So, uhmmm, if you have any other issues that come along with witnesses, if you know of somebody in advance that might be that way, let me know, and I will admonish the witness right away, right before he or she testifies." (ECF No. 14-6 at 209-10.)

Under California law, trial courts are given wide discretion to decide motions for a mistrial.  "A motion for mistrial is directed to the sound discretion of the trial court." People v. Jenkins, 22 Cal.4th 900, 985-86 (2000).  "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction." People v. Haskett, 30 Cal.3d 841, 854 (1982) (citing People v. Woodberry, 10 Cal. App. 3d 695, 708 (1970) (stating that, "[a] motion for a mistrial, on the other hand, serves a different purpose.  Such motion, when made under the circumstances here present, presupposes the effect of the evidence is so prejudicial as to be incurable by striking it and admonishing the jury to disregard it").  Moreover, "[w]hether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." Haskett, 30 Cal.3d at 854 (citing Illinois v. Somerville, 410 U.S. 458, 461-62 (1973)).

Here, petitioner has failed to show that the Court of Appeal's decision rejecting his ineffective assistance of counsel argument as presenting a ground for reversal of his conviction was contrary to, or an unreasonable application of clearly established federal law.  As noted, petitioner's trial counsel lodged a timely objection when the prosecutor's examination of its witness yielded an inappropriate and unresponsive answer, and the trial court immediately

instructed the jury to disregard the objected to testimony. Jurors are presumed to abide by such instructions from the court. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).

A review of this record establishes that Deckard's unresponsive answer to the prosecutor's question was not "so prejudicial as to be incurable," and any motion for mistrial would have been meritless. Just prior to the stricken response (ECF No. 14-6 at 204:15-16), Deckard testified that Freed told he and Lowry "[s]omething about, uhmmm, some guy and him, and, uhmmm, he might have hurt him." (ECF No. 14-6 at 203:14-15) and "he said something about some guy and that he might have hurt him, yes" (ECF No. 14-6 at 204:6-7). That admissible testimony – that Freed admitted to having "hurt" an individual – is at least as damning as a brief comment that Freed "has been known to fight people." Striking the answer and instructing the jury not to consider it in any fashion cured the offending testimony and a motion for mistrial was unlikely to succeed given the trial court's considerable discretion, particularly in light of its comments to counsel after it admonished the jury.

The state appellate court's decision not to second guess trial counsel's apparent tactical decision was not an unreasonable application of the standard set forth in <u>Strickland</u>. <u>See</u> <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 954 (9th Cir. 2002) ("We will not second-guess such decisions or use hindsight to reconstruct the circumstances of counsel's challenged conduct"). Hence, its determination was not unreasonable or contrary to Supreme Court precedent. 28 U.S.C. § 2254. The claim should be denied.

G. *Lesser Included Offense Instruction*

Petitioner argues the trial court violated his constitutional right to due process when it failed to sua sponte instruct the jury with the lesser included offense of voluntary manslaughter. (ECF No. 1 at 30-33.) Respondent counters that the state court's determination was not unreasonable and thus precludes habeas relief. (ECF No. 11 at 29-30.)

In rejecting this claim by petitioner, the Third Appellate District reasoned as follows:

Voluntary Manslaughter Instruction

Defendants argue the trial court should have sua sponte given a voluntary manslaughter instruction based on a theory of imperfect self-defense and imperfect defense of others. We disagree.

Self-defense requires a reasonable, good faith belief in the need to defend oneself against imminent danger of death or great bodily injury. (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1261.) An actual but unreasonable belief in the need to defend is referred to as unreasonable or imperfect self-defense. (*Ibid*.) A related concept is recognized for an intentional killing in the actual but unreasonable belief one must protect another from imminent danger of death or great bodily injury. (*People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on a different point in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.)

Imperfect self-defense and imperfect defense of others are not actually defenses, but are shorthand descriptions of a form of voluntary manslaughter, because they negate the element of malice. (*People v. Barton* (1995) 12 Cal.4th 186, 199-200.) Voluntary manslaughter is a lesser included offense of murder. (*Id*. at p. 199.) "[W]hen a defendant is charged with murder the trial court's duty to instruct sua sponte, or on its own initiative, on unreasonable self-defense is the same as its duty to instruct on any other lesser included offense: this duty arises whenever the evidence is such that a jury could reasonably conclude that the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense." (*Id*. at p. 201.)

"The concepts of perfect and imperfect self-defense are not entirely separate, but are intertwined. We have explained that 'the ordinary self-defense doctrine—applicable when a defendant reasonably believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified. [Citations.] It follows, a fortiori, that the imperfect self-defense doctrine cannot be invoked in such circumstances.' [Citation.]" (*People v. Valencia* (2008) 43 Cal.4th 268, 288.)

Here, the only evidence regarding the initiation of the physical attack was through the testimony of Matthews. He testified that when Johnson opened the door to his motel room, Freed asked for a glass of water, asked if Johnson remembered him, then "cracked the guy in the face and entered the room." While it is true that Matthews gave a statement to police shortly after the murder wherein he stated Johnson let Freed in the room, he later told police that Freed immediately punched Johnson in the face and forced his way in. Matthews testified at trial that his response in the first interview was not true.

Matthews also testified that after the attack, Freed indicated the victim had fought back, and Lemmon complained, "[W]e were only supposed to rough the guy up." These statements both indicate that defendants were the aggressors. Thus, the only evidence Matthews testified to at trial was that Freed initiated the physical attack. Even if, as Freed argues, a witness heard someone yelling "get off," "stop fighting" or "get off him," this would not change the fact that Freed was the initial aggressor, that Johnson had the right to defend himself.

Accordingly, the evidence was not such that a jury could reasonably conclude that defendants killed Johnson in the unreasonable but good faith belief in having to act in self-defense or defense of others, and no imperfect self-defense or defense of others instruction was appropriate. The trial court did not err in failing to give such instruction sua sponte.

(People v. Lemmon, slip. op., ECF No. 14-18 at 26-28.)

Legal Standards & Analysis

Federal habeas corpus review is only available to correct violations of federal law. 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68. The Supreme Court has held that in capital murder cases, the defendant has a constitutional right to have the jury instructed on a lesser included offense. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, in Beck, the Supreme Court reserved judgment on whether the Due Process Clause also requires instruction on lesser included offenses in noncapital cases. Id. at 638, n.14.

The Ninth Circuit has held the "[f]ailure of a state court to instruct on a lesser [included] offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) (citing Grech v. Wainwright, 492 F.2d 747, 748 (5th Cir. 1974)); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) (declining to find constitutional error arising from the failure to instruct on lesser included offenses in noncapital cases). The court in Bashor noted, however, that a defendant's right to adequate jury instructions on his theory of the case could, in some cases, constitute an exception to this general rule. Id.

A claim that a state court violated a federal habeas petitioner's due process rights by omitting a jury instruction requires a showing that the error so infected the entire trial that the resulting conviction violated due process. Henderson v. Kibbe, 431 U.S. at 155; Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). In cases in which a petitioner alleges that the failure to give an instruction violated due process, his burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155.

////

1    A state court's reasoned interpretation that a petitioner was not entitled to an instruction

2    under state law binds this court.  See Bradshaw v. Richey, 546 U.S. at 76 ("[A] state court's

3    interpretation of state law, including one announced on direct appeal of the challenged conviction,

4    binds a federal court sitting in habeas corpus"); see also Mullaney v. Wilbur, 421 U.S. 684, 691 &

5    n.11 (1975) (holding that "state courts are the ultimate expositors of state law" and federal courts

6    are bound by their interpretations of state law unless the holding "appears to be an obvious

7    subterfuge to evade consideration of a federal issue") (citation and internal quotation omitted).  A

8    state court's determination that the evidence does not support a requested instruction is entitled to

9    a presumption of correctness from a federal habeas court.  See Menendez v. Terhune, 422 F.3d at

10   1029.

11           Initially, the undersigned notes that petitioner's claim fails to present a federal question.

12   James v. Reese, 546 F.2d at 327.  To the degree petitioner argues his case is an exception to this

13   general rule, he has not met his heavy burden.

14           The Court of Appeal's reasoned decision interpreting state law, including the California

15   Supreme Court's decision in People v. Randle, 35 Cal.4th 987 (2005)[6] that petitioner contends it

16   "overlooked" (ECF No. 1 at 32), is presumed correct and binds this court.  Menendez, 422 F.3d at

17   1029.  Even so, a review of the record reveals the state court's reasoned opinion to be factually

18   accurate and legally sound.  Again, the Supreme Court has never explicitly held a non-capital

19   case defendant has the right to a lesser included offense instruction.  Bashor, 730 F.2d at 1240

20   (citing Keeble v. United States, 412 U.S. 205, 213 (1973)).  However, even considering the

21   exception in Bashor, there was no constitutional error in this case.

22           The finding of the state court on appeal was reasonable and petitioner has not shown that

23   he suffered any fundamental unfairness or that the omission had any substantial or injurious effect

24   or influence in determining the jury's verdict.  The undersigned concludes that the state court

25   decision was not contrary to, or an unreasonable application of, clearly established federal law

26   within the meaning of § 2254(d).  Accordingly, petitioner's claim concerning the failure to

27

28   [6] Overruled by People v. Chun, 45 Cal.4th 1172 (2009).

instruct on the lesser included offense of voluntary manslaughter should be denied.

## H.    *The Aider and Abettor Instruction*

Petitioner next asserts his due process rights were violated when the trial court refused to give an aider and abettor instruction at his request. (ECF No. 1 at 33-35.) Respondent replies that the state court's determination that the jury was properly instructed and that the trial court did not err in refusing the defense instruction was reasonable. (ECF No. 11 at 31-32.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Aider and Abettor Instruction
>
> Freed argues the trial court erred when it refused to give an aider and abettor instruction he requested. There was no error.
>
> The trial court instructed the jury with CALCRIM No. 400 as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator who directly committed the crime. A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."
>
> Lemmon proposed adding the following language to the instruction: "An aider and abettor is responsible for her own state of mind, not the actual perpetrator's state of mind. [¶] An aider and abettor may be guilty of a greater-homicide offense than the actual perpetrator when the aider and abettor helped or induced the actual perpetrator to kill the victim, and in doing so, the aider and abettor's state of mind was more culpable than the actual perpetrator's state of mind based on the combined acts of both participants as well as the aider and abettor's individual state of mind. [¶] An aider and abettor may also be guilty of a lesser-homicide offense than the actual perpetrator when the aider and abettor[']s state of mind was less culpable than the actual perpetrator's state of mind based on the combined acts of both participants as well as the aider and abettor's individual state of mind. [¶] The People have the burden of proving beyond a reasonable doubt the defendant's own state of mind."
>
> Freed, joined by Lemmon, now argues the proffered instruction was necessary to convey to the jury that an aider and abettor may be more or less culpable than the actual perpetrator depending on the aider and abettor's state of mind. They argue the instruction was a pinpoint instruction that the trial court was required to give upon request.
>
> "A pinpoint instruction relates specific evidence to the elements of the offense, highlighting a defense theory, and must be given on

40

request . . . ." (*People v. Grassini* (2003) 113 Cal.App.4th 765, 777.) While the trial court is required to instruct sua sponte on the general principles of law necessary to the jury's understanding of the case, a pinpoint instruction need not be given sua sponte. (*Ibid.*) The instruction the defendants proffered below was not a pinpoint instruction because it did not relate specific evidence to the elements of the offense. Instead, the instruction was offered to explain the general principles of law necessary to the jury's understanding of the law of aiding and abetting. However, the instructions that were given correctly instructed the jury on the law of aiding and abetting.

Defendants cite *People v. Loza* (2012) 207 Cal.App.4th 332, and argue the instruction did not adequately convey to the jury that an aider and abettor may be found guilty of a greater or lesser homicide crime than the perpetrator. *Loza* involved a prior version of CALCRIM No. 400, a version that was not given in this case. The old version instructed the jury that a person was "'"equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator . . . .'" (*Loza*, at p. 348.) *Loza* concluded the instruction was generally accurate, but potentially incomplete under the circumstances of that case. (*Id.* at p. 350.) Here, the objectionable word "equally" was deleted from the instruction, thus the instruction was not just generally accurate, but was completely accurate.

Moreover, the trial court instructed the jury with CALCRIM No. 401, which stated: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that, first, the perpetrator committed the crime; second, the defendant knew that the perpetrator intended to commit the crime; three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and four, the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider or abettor. If you conclude that the defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider or abettor; however, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider or abettor."

The instructions given did not imply that an aider and abettor must be guilty of the same crime as the perpetrator, and there is no evidence the jury was confused by the instructions. Instead, the instructions correctly stated that the aider and abettor must know and intend to aid, facilitate, promote, encourage, or instigate the perpetrator's commission of the crime. The trial court thus correctly instructed the jury regarding the requisite mental state for an aider and abettor, and did not err in refusing defendants' requested instruction.

1  (People v. Lemmon, slip. op., ECF No. 14-18 at 28-30.)

2              Defense Counsel's Jury Instruction Request & The Trial Court's Ruling

3       Counsel for petitioner requested the following instruction be read to the jury:

4              An aider and abettor is responsible for her own state of mind, not the
5              actual perpetrator's state of mind.

6              An aider and abettor may be guilty of a greater-homicide offense than
               the actual perpetrator when the aider and abettor's state of mind was
               more culpable than the actual perpetrator's state of mind based on
7              the combined acts of both participants as well as the aider and
               abettor's individual state of mind.
8

9              An aider and abettor may also be guilty of a lesser-homicide offense
               than the actual perpetrator when the aider and abettor['s] state of
10             mind was less culpable than the actual perpetrator's state of mind
               based on the combined acts of both participants as well as the aider
11             and abettor's individual state of mind.

12             The People have the burden of proving beyond a reasonable doubt
               the defendant's own state of mind.

13  (ECF No. 14-1 at 287.)  Counsel for petitioner provided additional supporting materials for the

14  court's consideration relevant to the requested instruction.  (ECF No 14-1 at 288-94.)  The court

15  and all counsel engaged in informal, off-the-record jury instruction conferences on June 5 and

16  June 6, 2013.  (ECF No. 14-1 at 159-60.)  Thereafter, the parties conducted a hearing on the

17  record regarding modifications and disputes arising during those informal proceedings.  In

18  relevant part, counsel for petitioner addressed his special instruction request and the following

19  colloquy occurred:

20             [PETITIONER'S COUNSEL]:  Your Honor, before we get to 401, I
               think this is where, if the Court were to choose to give it, that special
21             instruction that I gave regarding aiding and abetting would go
               because it actually - - it basically clarifies and expands the last
22             sentence of CALCRIM 400.

23             THE COURT:  Okay.  And I read the case that you brought me to
               and, uhmmm, read the instruction that you proffered, and I'm not
24             going to give it.  You can make your record on it.  I do believe that
               the instruction that deals with this section specifically is appropriate.
25

26             The case that you pointed out to me was a very unusual case,
               obviously.  It was very odd, and first of all, I think the - - I couldn't
27             quite find the language that you alluded to in the case itself, but I
               think that the Court, the San Diego court that was dealing with this
               case, was dealing with some very unusual circumstances; and
28             reading the decision, it was almost like the prosecutor formed his

                                              42

plan on how to prepare the case and deliver the case only after all the evidence was in. So, they're putting their instructions together and their theories together essentially after all the evidence is in.

So, I'm thinking that's why there was this problem with the - - the judge giving the instruction that he did and then not responding appropriately to the jury when the jury gave a note to the clerk about clarifying. So, it was a very unusual case. I think you did your best to try to, you know, cover some issues, but I think it's fully covered within the instruction that deals with this.

[PETITIONER'S COUNSEL]: And here's the issue I have: In the *Loza* opinion, it actually notes in a footnote that CALCRIM 400 has been modified to take out the word "equally" before the word "guilty" in the last sentence, and that's the way the instruction currently reads.

THE COURT: Yes.

[PETITIONER'S COUNSEL]: My issue is that I think taking that word out really didn't change much of anything because it doesn't inform the jury that they could find a lesser degree as to an aider and abettor based upon an individual mens rea. And the situation that would present itself here would be - - and I don't believe it would apply to felony murder for obvious reasons; however, if this jury were to reject the felony murder theory and proceed on straight first- and second-degree murder, then I think there could be a situation where a jury could find first-degree murder, intent to kill on the person that actually did the stabbing and perhaps find second-degree murder as to the person who did not do the stabbing because of a lack of malice, essentially, and so that's why I'm asking for this particular instruction.

THE COURT: I understand why you're asking for it, but it's fully covered, and they deal with the - - those other, uhmmm, instructions that we were talking about deal with what the jury needs to consider when looking at the different participants, and, you know, it clearly lays out that there's got to be a particular state of mind. So, I'm - - I'm satisfied that that's covered by the instructions that we have.

[COUNSEL FOR FREED]: Your Honor, just for the record, on behalf of Mr. Freed, I'm going to join Mr. Ryan's request for that instruction.

THE COURT: Okay.

[PETITIONER'S COUNSEL]: And the Court has my copy and will make that an exhibit at some point?

THE COURT: I will. I've attached portions of that case. *It's People v. Loza* and the cite is 207 Cal.App.4th 332. And I'm just going to go ahead and give it to my clerk as the Court's next exhibit.

(ECF No. 14-7 at 490-92.)

<u>Legal Standards & Analysis</u>

Claims of error in state jury instructions are generally matters of state law and thus do not usually invoke a constitutional question. <u>See</u> <u>Gilmore v. Taylor</u>, 508 U.S. 333, 343 (1993). And, the federal court is bound by a state appellate court's interpretation of California state law. <u>See</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions"). In order to merit federal habeas relief on a claim that the trial court erred by failing to properly instruct a jury, a petitioner must show that the trial court committed an error that "so infected the entire trial that the resulting conviction violates due process." <u>Estelle</u>, 502 U.S. at 71-72.

Additionally, as noted elsewhere, claims of instructional error must be evaluated in the context of the instructions as a whole, not in artificial isolation. <u>Estelle</u>, 502 U.S. at 72; <u>United States v. Frady</u>, 456 U.S. 152, 169 (1982). Moreover, a petitioner is not entitled to habeas relief unless an error had a "substantial and injurious effect or influence in determining the jury's verdict." <u>See</u> <u>Brecht</u>, 507 U.S. at 637-38; <u>see also</u> <u>Clark v. Brown</u>, 450 F.3d at 905 ("A habeas petitioner must show that the alleged instructional error 'had substantial and injurious effect or influence in determining the jury's verdict'").

Here, petitioner has not established any error infecting the entire trial resulting in a conviction that violates due process. The state appellate court's denial of his claim is neither contrary to, nor an unreasonable application of, Supreme Court precedent.

First, petitioner's assertion, that the state court's finding that the requested instruction was not a pinpoint instruction was wrong because "the proffered instruction would have informed the jury how to relate evidence … to the required element(s) of intent" (ECF No. 1 at 33-34), does not present a federal question. <u>Gilmore v. Taylor</u>, 508 U.S. at 343. The state court's ruling is entitled to deference. <u>Bradshaw v. Richey</u>, 546 U.S. at 76.

The question before the undersigned in light of the trial court's refusal to instruct the jury in accordance with petitioner's requested instruction is whether that refusal "so infected the entire trial that the resulting conviction violates due process" and whether any error had a "substantial

44

and injurious effect or influence" on the jury's verdict. Estelle, 502 U.S. at 71-72; Brecht, 507 U.S. at 637-38.

A review of the jury instructions as a whole (ECF No. 14-1 at 162-227) reveals that the trial court's refusal did not infect the entire trial resulting in a violation of petitioner's constitutional rights. Estelle, 502 U.S. at 72; United States v. Frady, 456 U.S. at 169. The jury was properly instructed regarding aiding and abetting (ECF No. 14-1 at 199-200), the elements of the various crimes alleged against petitioner and the burdens of proof required to find petitioner guilty of the offenses and/or allegations. (See, e.g., ECF No. 14-1 at 167-68, 191-98, 201-03, 205-08, 210-21, 224.)

Moreover, the jury found true the special allegation of murder during the commission of a robbery. (ECF No. 14-1 at 243.) CALCRIM No. 703, the instruction pertaining to the jury's consideration of the allegation, provides, in relevant part:

> If you decide that a defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstances of Murder during the commission of a Robbery and Murder during the commission of a Burglary, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life.
>
> In order to prove these special circumstances for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor or a member of a conspiracy, the People must prove either that the defendant intended to kill, or the People must prove all of the following:
>
> 1.   The defendant's participation in the crime began before or during the killing;
>
> 2.   The defendant was a major participant in the crime;
>
> AND
>
> When the defendant participated in the crime, he acted with reckless indifference to human life.  [¶…]

(ECF No. 14-1 at 206.)  Because the jury found true this special allegation – requiring it to find either the intent to kill or, significant here, that petitioner was a major participant – even assuming the trial court erred in failing to give the requested defense instruction, any error was harmless.

The jury's finding establishes it would not have found him guilty of a lesser crime than Freed or somehow less culpable than Freed because it considered him a major participant. See O'Neal v. McAninch, 513 U.S. at 434 (habeas relief is available only if the record demonstrates the jury's decision was substantially influenced by an error or there is "grave doubt" about whether an error was harmless).

Notably, after a two-week trial, it took the jury less than four hours to deliberate and reach its conclusions as to both defendants and the various counts and special allegations alleged against them. (ECF No. 14-1 at 231-32.) Despite petitioner's assertion that the evidence overwhelmingly favored his defense theory, the jury's verdict and a review of the record supporting that verdict establish otherwise.

Petitioner fails to meet the demanding standard for habeas corpus relief based on an alleged instructional error. The trial court's rejection of the requested pinpoint instruction did not render his trial fundamentally unfair in violation of due process. The concept of the additional instruction was already covered by the standard instructions as explained by the state appellate court. See Duckett v. Godinez, 67 F.3d at 743-46 (holding that due process does not require the trial court to instruct on the defendant's precise theory of the case where other instructions adequately cover the defense theory). No relief is available for petitioner's claim of instructional error because the state court's determination was not unreasonable. 28 U.S.C. § 2254. Therefore, the undersigned recommends this claim be denied.

I. *The Provocation Instruction*

Finally, petitioner complains that trial counsel provided ineffective assistance by failing to request an instruction on provocation. (ECF No. 1 at 35-36.) Respondent maintains that the state court's determination otherwise was reasonable and not contrary to Supreme Court precedent. (ECF No. 11 at 33-34.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

////

Provocation Instruction

Freed, joined by Lemmon, argues he received ineffective assistance of counsel at trial because his trial counsel failed to request CALCRIM No. 522, which provides: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.] [¶] [Provocation does not apply to a prosecution under a theory of felony murder.]" Freed recognizes that the instruction is a pinpoint instruction, thus not an instruction which the trial court must give sua sponte. (*People v. Rogers* (2006) 39 Cal.4th 826, 877-878.)

Freed argues the jury could have believed that Johnson let him into his motel room, that an argument and fight ensued thereafter because Johnson would not surrender Welcher's property, and that Freed was provoked into stabbing Johnson, thereby negating the element of premeditation and deliberation, and reducing first degree murder to second degree murder.

To prevail on a claim of ineffective assistance of counsel, defendants must establish that: (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) prejudice, i.e., that there is a reasonable probability that but for counsel's deficient performance, the result of the trial would have been different. (*People v. Williams* (1997) 16 Cal.4th 153, 214-215.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citation.]" (*People v. Williams* (1988) 44 Cal.3d 883, 937.) In demonstrating prejudice, defendants "must carry [their] burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*Ibid.*)

We need not determine whether counsel's performance was deficient if we can dispose of the claim on the ground of lack of prejudice. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.) There is not a reasonable probability of a different outcome here because the jury, in addition to finding defendants guilty of first degree murder after receiving felony-murder, premeditation, and lying-in-wait instructions, found true the special allegations that defendants murdered Johnson during the commission of robbery and burglary. Section 189 provides that all murder committed in the perpetration or attempted perpetration of robbery and burglary is first degree murder. Thus, even if there were sufficient evidence of provocation, it would not reduce the murder to second degree because provocation cannot negate first degree murder in the commission of a robbery or burglary. (See *People v. Wright* (2015) 242 Cal.App.4th 1461, 1496 [No prejudice in court's refusal to give provocation instruction where jury found true special circumstance of lying in wait.].) Accordingly, any claim of ineffective assistance of counsel fails because defendants cannot show prejudice.

47

1    (People v. Lemmon, slip. op., ECF No. 14-18 at 30-32.)

2        Legal Standards & Analysis

3        As referenced elsewhere, in order to prevail on a claim of ineffective assistance of

4    counsel, petitioner must show:  (1) that counsel's performance was deficient, and (2) that he was

5    prejudiced by the deficient performance.  Strickland v. Washington, 466 U.S. at 687.  A court

6    evaluating an ineffective assistance of counsel claim does not need to address both components of

7    the test if the petitioner cannot sufficiently prove one of them.  Id. at 697.  Here, petitioner cannot

8    establish prejudice even assuming trial counsel was deficient.

9        "CALCRIM No. 522 is a pinpoint instruction, and the trial court has no duty to give a

10   pinpoint instruction sua sponte."  People v. Rogers, 39 Cal.4th 826, 878-79 (2006) [addressing

11   CALCRIM No. 522's predecessor instruction, CALJIC No. 8.73]; Bench Notes to CALCRIM No.

12   522.)  An instruction that "'relates the evidence of provocation to the specific legal issue of

13   premeditation and deliberation ... is a "pinpoint instruction" ..., and need not be given on the

14   court's own motion.'"  People v. Nelson, 1 Cal.5th 513, 541-42 (2016).

15       Felony murder differs from both malice murder and voluntary manslaughter in significant

16   ways.  It entails commission of an inherently dangerous felony, requires no proof of intent or

17   conscious disregard of life, and renders irrelevant defenses that mitigate malice such as

18   provocation or self-defense.  See People v. Robertson, 34 Cal.4th 156, 165 (2004), overruled on

19   other grounds in People v. Chun, 45 Cal.4th at 1197-201; People v. Loustaunau, 181 Cal. App. 3d

20   163, 170 (1986) ("[w]hen a burglar kills in the commission of a burglary, he cannot claim self-

21   defense, for this would be fundamentally inconsistent with the very purpose of the felony-murder

22   rule"); see also People v. Seaton, 26 Cal.4th 598, 665 (2001) (under felony-murder rule, killing in

23   commission of felonies enumerated in § 189 constitutes first degree murder even if killer acted in

24   unreasonable self-defense); People v. Johnson, 150 Cal. App. 4th 1467, 1481-82 (2007) [the

25   circumstance of felony murder serves to impute the element of malice, obviating a finding of

26   malice by the jury.  Self-defense and imperfect self-defense are relevant only to the issue of the

27   existence or nonexistence of malice).

28   ////

48

Here, petitioner was found guilty of first degree felony murder committed during the commission of both robbery and burglary. More specifically, the jury found, as special circumstances, that the murder was committed while petitioner was engaged in the commission the crime of robbery and of burglary. Cal. Penal Code § 190.2(a)(17). It also found true the special allegation of robbery in concert with two or more persons. Cal. Penal Code, § 213(a)(1(A). (See ECF No. 14-1 at 240-245 & 14-8 at 106-108.) The defense of provocation was irrelevant given those findings.

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

A review of this record reveals there is no reasonable probability of a different outcome where defense counsel for petitioner argued there was no evidence of premeditation or lying in wait. (ECF No. 14-8 at 52-56.) Further, counsel argued felony murder did not apply because petitioner lacked the intent to commit either robbery or burglary and the victim did not own the property. (ECF No. 14-8 at 56 ["when it comes to robbery, we're talking about taking something from an owner. You have to have this intent to deprive the owner of that property, of his possession - - or his ownership of that, and we don't have that in this case" & "he didn't have intent to deprive the owner of anything'], 57 ["Burglary is entering into a … motel room and at that moment having the intent to commit theft or robbery. Robbery we just talked about. There's no intent here. There's intent to take something from its rightful owner. And theft, again, we're not talking about Mr. Johnson's belongings. There was no intent to take that"], 59 ["there still has to be intent on Mr. Lemmon's part to commit the robbery or the burglary, and there simply isn't in this case"], 60 ["Mr. Lemmon had no intent to rob anybody, just to get Amanda's clothes" & "Because this wasn't a planned robbery, because this wasn't a planned burglary, it wasn't felony murder. The intent is not there"], 65 ["He didn't have the pepper spray … It wasn't a robbery. It wasn't a burglary at least in Mr. Lemmon's mind"], 70 ["Mr. Lemmon wanted to help his girlfriend get her clothes back from an ex-boyfriend. It's just that simple"], 71 ["Mr. Lemmon

1  is not guilty of robbery.  He's not guilty of burglary.  He's not guilty of murder in any way to any

2  degree"].)

3       As the verdicts make clear, the jury believed petitioner to be guilty of both burglary and

4  robbery, implicating the felony murder rule.  It was not swayed by trial counsel's arguments that

5  petitioner did not have the intent to deprive an owner of his property or that he did not enter the

6  motel room in the absence of an intent to commit a theft.  Petitioner's assertions to the contrary

7  are not sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694.

8       Based on the foregoing, it was not unreasonable for the state court to conclude there was

9  no ineffective assistance of counsel in failing to request provocation instructions in this case.

10  Even assuming counsel acted deficiently, the state court's conclusion was reasonable because it

11  was not reasonably probable petitioner would have obtained a more favorable outcome with the

12  benefit of the provocation instruction.  The jury found petitioner guilty of robbery and burglary

13  and that Johnson was killed during the commission of those crimes.  Thus, petitioner was guilty

14  of first degree felony murder even if he acted in unreasonable self defense or the killing resulted

15  from a sudden quarrel.  Hence, because provocation instructions would have been irrelevant in

16  this case, petitioner cannot show that his counsel's failure to request CALCRIM No. 522 was

17  prejudicial.  Strickland, 466 U.S. at 687.  Therefore, the state court's determination was neither

18  unreasonable nor contrary to clearly established federal law.  28 U.S.C. § 2254.  The undersigned

19  recommends the claim be denied.

20  VI.  Conclusion

21       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

22  habeas corpus be denied.

23       These findings and recommendations are submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25  after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

27  "Objections to Magistrate Judge's Findings and Recommendations."   If petitioner files

28  objections, he shall also address whether a certificate of appealability should issue and, if so, why

and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 12, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Lemm1639.157